1  William C. Dresser, 104375
   4 North Second Street, Suite 1230
2  San Jose, California 95113-1307
   Tel:   408/279-7529
3  Fax:   408/298-3306

4  Attorneys for Relator

**Filed**

APR - 4 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

United States of America, ex. rel. D,         No. CV 12-01745

   Plaintiff,                                 COMPLAINT OF THE UNITED STATES

   v.                                         False Claims Act, 31 U.S.C. §§3729, et
                                              seq., and Common Law Causes of Action
Qualium Corp, Tara Nader,
Anooshiravan Mostowfipour, Bay Sleep          DEMAND FOR JURY TRIAL
Clinic, Amerimed Corp, Access Medical
Consultants Inc., and Does 1 through 50,      Filed under seal for sixty days pursuant to
inclusive,                                    31 USC § 3730(a)(2)

   Defendants.
_____/

US_Qualium\Pld\CoverPg.402

---

United States v Qualium, Nader, Mostowfipour, Bay Sleep, Amerimed, Access Medical
Cover page to file under seal Qui Tam Complaint                                    1

1  restitution pursuant to the False Claims Act for the time period of April 2002 through the
2  present date.
3       3. Management, officers, supervisors, executives of Defendants Qualium Corp
4  and Amerimed Corp participated in the unlawful scheme to defraud the United States by
5  submitting false claims to the United States for Medicare and Supplementary Medical
6  Insurance payments.
7       4. Defendants submitted false claims to the United States including to the Centers
8  for Medicare and Medicaid Services (CMS) and the Department of Health and Human
9  Services by initial claims for Medicare certification, subsequent claims for certification,
10 and claims for payments which were not in accordance with Medicare and Supplementary
11 Medical Insurance Benefits requirements, all without making any fiscal adjustments.
12 These claims have been made by defendants dba Qualium Corp pursuant to the following
13 NPI numbers for the following facility locations:

| NPI | City | State | ZIP |
|---|---|---|---|
| 1275618811 | LOS GATOS | CA | 95032-2600 |
| 1922152107 | MENLO PARK | CA | 94025-4751 |
| 1184924029 | SALINAS | CA | 93908 |
| 1770882946 | MONTEREY | CA | 93940-4546 |
| 1548545445 | IRVINE | CA | 92618-2059 |
| 1265431803 | MENLO PARK | CA | 94025-4751 |
| 1801940085 | LOS GATOS | CA | 95032-2600 |
| 1508910928 | SAN FRANCISCO | CA | 94109-5438 |
| 1245384312 | BERKELEY | CA | 94705-2051 |
| 1851445944 | WALNUT CREEK | CA | 94598-3013 |
| 1265665038 | DALY CITY | CA | 94015-4900 |
| 1407165319 | LOS ANGELES | CA | 90025-1007 |
| 1043590276 | OAKLAND | CA | 94609-3404 |
| 1912168683 | FREMONT | CA | 94538-1738 |

| | | | | |
|---|---|---|---|---|
| 1 | 1427219195 | MOUNTAIN VIEW | CA | 94040-4317 |
| 2 | 1497916175 | REDWOOD CITY | CA | 94062-1483 |
| 3 | 1023279700 | SAN JOSE | CA | 95116-1909 |
| 4 | 1871754556 | GILROY | CA | 95020-3540 |
| 5 | 1790924660 | PLEASANTON | CA | 94588-2828 |

5. These claims have also been made by defendants dba Amerimed Corporation including under NPI number 1447304548 for a Redwood City location.

6. Defendants Qualium Corp, Amerimed Corporation, Nader and Mostowfipour had been receiving money based on false representations that sleep clinic facilities, services and dispensation of medical products met Medicare and Supplementary Medical Insurance benefits requirements including those for Independent Diagnostic Testing Facilities set forth in Title 42 of the Code of Federal Regulations. These included by actively concealing facts from CMS and the Department of Health and Human Services during Medicare audits that would show that sleep clinic facilities did not meet federal regulations, by falsely stating that an authorized supervising registered polysomnagraphic sleep technologist was acting as supervisor when he was not, by falsely stating that persons providing sleep clinic services were registered technologists when they were not, by falsely stating the persons dispensing sleep products were certified, and by falsely stating that sleep clinic services were provided at a Medicare approved facility when they were in fact provided elsewhere.

7. Defendant Mostowfipour represented that he was acting as supervisor and "clocked in" for working as a sleep technologist at approved facilities including Los Gatos when he in fact was never present. Other non-certified and non-registered sleep technicians and technologists were directed to not "clock in" for work in order to conceal who was working.

8. Defendants represented to CMS that only Mostowfipour and one other registered polysomnagraphic sleep technologist would perform sleep services at a San

Francisco facility when in fact Mostowfipour did not provide the services and other individuals who were not licensed or certified by either the State of California or a national accrediting service provided those services.

9. Defendants paid substandard wages to individuals without sleep technician and technologist experience, and without training and proficiency as evidenced by licensure or certification by the appropriate State health or education department or certification by an appropriate national credentialing body, yet defendants billed CMS for these services.

10. Defendants represented the DME dispensing "employees" of Amerimed Corporation were properly certified for Home Medical Device Retailer dispensing when they were not. Defendant Nader falsely signed certification applications to the California Department of Public Health which stated that applicants had training and more than one year of experience relating to dispensing medical devices when they in fact had no training and no experience. One notable example of this is that a housekeeper for defendants Nader and Mostowfipour was billed as if an experienced DME technician to dispense CPAP machines and masks. Defendants billed the dispensing as if done by a different licensed employee. Defendants Nader and Mostowfipour have used their direct relatives - including sibling and child - to provide services when their direct relatives were not licensed or certified. Defendants Nader and Mostowfipour in the Medicare application for billing privileges identified as a designated HMDR license exemptee who was not qualified to be an exemptee. These persons were not certified or licensed to, when necessary, install these products as well as instruct patients on their proper in-home use.

11. Defendant entity Amerimed operated out of the same properties owned and leased by Defendant entity Qualium and dispensed products prescribed as a direct result of services provided by Defendant entity Qualium.

12. Defendants including Amerimed, Nader and Mostowfipour paid as a 1099 independent contractor an individual whose task was to dispense medical products, and then billed CMS and the Department of Health and Human Services as though the

1 | products had been dispensed by a duly qualified employee.

2 |     13. Defendants and each of them were fully aware of these and other instances of services billed to CMS and the Department of Health and Human Services which were not by individuals who had the training and proficiency as evidenced by licensure or certification by the appropriate State health or education department or by an appropriate national credentialing body. These were all direct violations of the provisions of 42 CFR 410.33 and 425.57.

    14. Qualium Corp, Nader and Mostowfipour billed as though sleep clinic services were performed at a San Francisco facility when they were in fact performed at one of fifteen other facilities. This was also in direct violation of federal regulations governing Independent diagnostic testing facilities.

    15. Defendant Mostowfipour created a "medusa" software program and used the program to assist in controlling data including client, facility, billing and insurance data to control what information was submitted to defendant Access Medical Consultants, Inc. Defendants Nader and Mostowfipour directed Access Medical Consultants, Inc. to submit billings to Medicare that altered location services in the Medicare form from "satellite offices" where the services were actually performed and products were dispensed to the Medicare approved facility.

    16. These violations of federal regulations extended to the provision of services to Medicare patients referred by third persons including Kaiser Permanente Medical Group.

    17. Defendants Qualium, Nader and Mostowfipour delivered and caused to be delivered checks to physicians identified as "consultation services" which were simply a flat fee payment per study regardless of whether there was any actual consultation and regardless of whether the physician had expertise in reading sleep studies.

    18. Plaintiff is informed and believes and thereon alleges that Defendants Qualium, Amerimed, Nader and Mostowfipour also provided financial and other benefits to referring physicians in violation of Medicare conflict of interest regulations.

19. Defendants did not "Openly post these (11 CFR section 410.33) standards for review by patients and the public" as required by federal regulations, but instead actively concealed the true facts concerning certifications, Medicare and CMS approval, and CMS billing from their employees and the public. Defendants used Access Medical Consultants, Inc. for their billing as part of their concealment of these facts.

20. Relator is an individual formerly employed by defendants doing business as defendant Bay Sleep Clinic. Relator learned in her work for Bay Sleep Clinic commencing in 2010 of facts tending to indicate that billings did not comply with federal regulations. Defendant Qualium Corp and its controlling individuals Nader and Mostowfipour dba Bay Sleep Clinic submitted in 2010 applications and in 2010 re-submitted applications for Medicare certification including for a change in practice location to a new building for a Los Gatos facility. The facts of billing fraud were discovered when Medicare files were "cleaned," a separate series of files and cabinets were opened for Medicare claims and certifications, and documents for earlier certifications were then reviewed. Relator subsequently learned through her employment other facts concerning the billing practices of defendants which acted to defraud the United States.

21. Relator is informed and believes and thereon alleges that the payments and reimbursements by the federal government to defendants Qualium, Amerimed, Nader and Mostowfipour have occurred on repeated occasions commencing when Qualium first received approval by Medicare, and in excess of ten years before the date of filing this complaint, and occurred on repeated occasions commencing when Amerimed first submitted an application for approval by Medicare.

## II. JURISDICTION

22. The Court has subject matter jurisdiction to entertain this action under 28 U.S.C. §§ 1331 and 1345 and supplemental jurisdiction to entertain the common law and equitable causes of action pursuant to 28 U.S.C. § 1367(a). The Court may exercise personal jurisdiction over the defendants pursuant to 31 U.S.C. § 3732(a) because at

least one of the defendants resides or transacts business in the Northern District of California, and because at least one of the agencies to whom defendants submitted false claims or caused false claims to be submitted maintains its headquarters in this District. Moreover, 28 U.S.C. § 1407 necessarily confers the jurisdiction of the Court over the parties on this Court to the extent this may be considered or treated as a multi-district proceeding.

### III. VENUE

23. Venue is proper in the Northern District of California under 31 U.S.C. § 3732 and 28 U.S.C. § 1391(b) and (c) because at least one of the defendants resides or transacts business in that District. Venue would also be proper in this District pursuant to U.S.C. § 1407 because this action is subject to consolidation in this District for pre-trial proceedings.

### IV. PARTIES

24. The United States brings this action on behalf of the Federal Government and Federal Government programs for Medicare, Supplementary Medical Insurance benefits and other Federal Government Programs which remit and remitted payment to defendants Qualium Corp, Amerimed Corporation, Nader and Mostowfipour for claims submitted by them and on their behalf for remuneration for purportedly Medicare and Supplementary Medical Insurance qualifying services and supplies.

25. Pursuant to 31 U.S.C. § 3730(b)(1), Relator brings this action against defendants Qualium Corp, Amerimed Corporation, Nader and Mostowfipour and co-defendants and their affiliates, departments and subsidiaries, including those persons received benefits by the alter ego pass through use of Qualium Corp as if it was a duly existing corporate entity, and including Doe defendants on behalf of themselves and of the United States.

26. The Relator is an "original source" of information and has direct percipient witness knowledge of suspected fraud. Plaintiff's complaint is based on plaintiff's own

discovery of actions constituting fraud.

27. Defendant Qualium Corp, aka Qualium Corp., aka Qualium Corporation, dba Bay Sleep Clinic, is a business entity formed under the laws of the State of California. It is successor to a prior entity of the same name that did business at 1776 Sacramento Street, Suite 502, San Francisco CA 94109. The previously dissolved corporate entity operated at a property owned by defendants Nader and Mostowfipour individually. Defendant Qualium Corp holds itself out as a corporation doing business at 14851 Sobey Rd, Saratoga CA 95070. Qualium performs polysomnographic sleep tests on individuals suffering from potentially life-threatening sleep disorders such as sleep apnea.

28. Plaintiffs are informed and believe and thereon allege that Defendant Qualium Corp is and at all times relevant to the matters alleged herein has been operated as the alter ego of Defendants Nader and Mostowfipour. Plaintiffs further allege that Defendants Nader and Mostowfipour dominated, influenced and controlled the affairs of Qualium Corp, that at all times relevant to the matters alleged herein there existed a unity of interest and ownership between Defendants Nader and Mostowfipour and Defendant Qualium Corp such that the individuality and separateness of the individual and the corporation was not maintained, that at all times since the adoption and filing of an articles of incorporation of Qualium Corp the corporation has been a mere shell and naked framework which Defendants Nader and Mostowfipour used as a conduit for the conduct of their personal, individual affairs; that the corporation was created and continued pursuant to a fraudulent plan, scheme and device whereby its income, revenue and profits were diverted to Defendants Nader and Mostowfipour and/or to entities that they control including "Sinarosa Holding" and the later formed AmeriMed Corp, including that money received in the name of the corporation was obtained fraudulently and the corporate entity had no legal right to transfer the income or profits to individual Defendants Nader and Mostowfipour, that by virtue of the transfer of income and profits the corporate entity is now incapable of responding to the obligations of the corporation

1  for the claims set forth in this proceeding, and that the liability of the parties to the plaintiff
2  United States is of such character that the use of the corporation fiction constitutes a
3  fraud on the corporation's creditors, including the plaintiff; that adherence to the fiction of
4  the corporation's separate existence would, under the circumstances, sanction a fraud
5  and promote injustice; that the corporation was organized as a mere shell and sham,
6  without true capital, assets, or form or structure; and that the corporation is insolvent and
7  will be unable to respond in the amount due and owing according to the claims stated by
8  Plaintiff in the within action.

9      29. Defendant Amerimed Corporation aka Amerimed Corp. dba Amerimed Sleep
10 Diagnostics is a business entity formed as though pursuant to the laws of the State of
11 California and holding itself out as a California corporation doing business at 14851
12 Sobey Rd, Saratoga CA 95070.

13     30. Plaintiffs are informed and believe and thereon allege that Defendant
14 Amerimed Corporation is and at all times relevant to the matters alleged herein has been
15 operated as the alter ego of Defendants Nader and Mostowfipour.  Plaintiffs further allege
16 that Defendants Nader and Mostowfipour dominated, influenced and controlled the affairs
17 of Amerimed Corporation, that at all times relevant to the matters alleged herein there
18 existed a unity of interest and ownership between Defendants Nader and Mostowfipour
19 and Defendant Amerimed Corporation such that the individuality and separateness of the
20 individual and the corporation was not maintained, that at all times since the adoption and
21 filing of an articles of incorporation of Amerimed Corporation the corporation has been a
22 mere shell and naked framework which Defendants Nader and Mostowfipour used as a
23 conduit for the conduct of their personal, individual affairs; that the corporation was
24 created and continued pursuant to a fraudulent plan, scheme and device whereby its
25 income, revenue and profits were diverted to Defendants Nader and Mostowfipour and/or
26 to entities that they control including "Sinarosa Holding" including that money received in
27 the name of the corporation was obtained fraudulently and the corporate entity had no
28

1  legal right to transfer the income or profits to individual Defendants Nader and
2  Mostowfipour, that by virtue of the transfer of income and profits the corporate entity is
3  now incapable of responding to the obligations of the corporation for the claims set forth
4  in this proceeding, and that the liability of the parties to the plaintiff United States is of
5  such character that the use of the corporation fiction constitutes a fraud on the
6  corporation's creditors, including the plaintiff; that adherence to the fiction of the
7  corporation's separate existence would, under the circumstances, sanction a fraud and
8  promote injustice; that the corporation was organized as a mere shell and sham, without
9  true capital, assets, or form or structure; and that the corporation is insolvent and will be
10 unable to respond in the amount due and owing according to the claims stated by Plaintiff
11 in the within action.

12     31. Each of Defendants Tara Nader and Anooshiravan Mostowfipour aka Anoosh
13 Mostowfipour aka Anoosh Mostowfi are individuals residing in the County of Santa Clara
14 in the State of California within the Northern District of California.

15     32. Defendant Access Medical Consultants Inc. dba AMC is a business entity
16 holding itself out to be a California corporation doing business in Los Gatos in the County
17 of Santa Clara in the Northern District of California. Defendant Access Medical
18 Consultants, Inc. is a third party submitter of claims to Medicare, CMS and the
19 Department of Health and Human Services of the United States which was used by
20 defendants Qualium, Amerimed, Nader and Mostowfipour as an instrument in the
21 fraudulent submission of claims.

22     33. The persons identified as Doe defendants are not fully known to relator, who
23 thus identifies them under said fictitious names. Each are legally responsible to the
24 United States for their active and passive role in the fraud which is the subject of this
25 action.

26 V. THE LAW

27     34. The federal False Claims Act (FCA) provides, among other things, that: (a)

28

United States v Qualium Corp, Nader, Mostowfipour, Bay Sleep and Amerimed
Qui Tam Complaint                                                         10

any person who (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the Government; (3) conspires to defraud the Government by getting a false or fraudulent claim paid or approved by the Government;…or (7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government, is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person.

35. The FCA provides that the terms "knowing" and "knowingly" mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information with no proof of specific intent to defraud being required. 31 U.S.C. § 3729.

36. The False Claims Act was amended pursuant to Public Law 111-21, the Fraud Enforcement and Recovery Act of 2009 ("FERA"), enacted May 20, 2009. Given the nature of the claims at issue, Section 3279(a)(1) of the statute prior to FERA, and as amended in 1986, and Section 3729(a)(1)(A) are both applicable here. Section 3729(a)(1) applies to conduct before FERA was enacted, and section 3729(a)(1)(A) applies to conduct after FERA was enacted. Section 3729(a)(1)(B) was formerly Section 3729(a)(2), and is applicable to all claims in this case by virtue of Section 4(f) of FERA.

## VII. DEFENDANTS' SUBMISSION OF CLAIMS

37. In 1965, Congress enacted Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., known as the Medicare program. Entitlement to Medicare is based on age, disability, or affliction with end-stage renal disease. See 42 U.S.C. §§ 426, 426A.

Medicare is administered by CMS, which is part of HHS. At all times relevant to this complaint, CMS contracted with private contractors referred to as "fiscal intermediaries," "carriers," and "Medicare Administrative Contractors," to act as agents in reviewing and paying claims submitted by healthcare providers. See 42 U.S.C. § 1395h; 42 C.F.R. §§ 421.3, 421.100.

38. To participate in the Medicare program, health care providers enter into agreements with HHS-CMS in which the provider agrees to conform to all applicable statutory and regulatory requirements for reimbursement from Medicare, including the provisions of Section 1862 of the Social Security Act and Title 42 of the Code of Federal Regulations. Among the legal obligations of participating providers is the requirement not to make false statements or misrepresentations of material facts concerning payment requests. See 42 C.F.R. §§ 1320a-7b(a)(1)-(2), 413.24(f)(4)(iv), 1001.101(a)(1); 42 U.S.C. § 1320a-7b(a)(1)-(2).

39. For outpatient treatment, all Medicare reimbursement is subject to Part B. See 42 U.S.C. §§ 1395j-1395w-4. Polysomnographic sleep tests are included in the definition of "medical and other health services" for purposes of Medicare Part B coverage. See 42 C.F.R. § 410.10(e).

40. To obtain Medicare reimbursement pursuant to Part B, providers submit claims using forms known as CMS 1500s. Among the information the provider includes on a CMS 1500 form are certain five-digit codes, known as Current Procedural Terminology, or CPT codes, that identify the services rendered and for which reimbursement is sought.

41. Any provider seeking Medicare reimbursement through Part B must certify on a CMS Form 1500 that "the services shown on this form were medically indicated and necessary for the health of the patient and were personally furnished by me or were furnished incident to my professional service by my employee under my immediate personal supervision."

42. The sixteen (16) polysomnographic testing facilities operated by Qualium are considered Independent Diagnostic Testing Facilities ("IDTFs") for Medicare Part B purposes.

43. As a general rule, diagnostic testing procedures performed at an IDTF may be reimbursed under Medicare Part B. See 42 U.S.C. § 410.33(a).

44. According to CMS regulations,

> Any nonphysician personnel used by the IDTF to perform tests must demonstrate the basic qualifications to perform the tests in question and have training and proficiency as evidenced by licensure or certification by the appropriate State health or education department. In the absence of a State licensing board, the technician must be certified by an appropriate national credentialing body. The IDTF must maintain documentation available for review that these requirements are met.

42 U.S.C. § 410.33(c).

44. Thus, Medicare Part B will not pay for diagnostic tests performed by nonphysician personnel who do not possess a license from the appropriate state health department or a certification from an appropriate national credentialing body.

45. Furthermore, federal regulations require that the IDTF certify in its enrollment application that it has technicians on staff who maintain the appropriate credentials to perform the services provided. See 42 U.S.C. § 410.33(g)(12).

46. Failure to employ technicians with the appropriate state license or nationally recognized credential to perform diagnostic tests may result in the revocation of a provider's billing privileges. See 42 U.S.C. § 410.33(h).

47. Defendants and each of them had specific knowledge of and were fully aware during the time period relevant hereto of the prohibitions the legal restrictions of submitting false claims to the government. Among other things, the standard CMS application form required defendants Mostowfipour and Nader to certify to the truthfulness of the information submitted:

""[b]y my signature, I certify that the information contained herein is true, correct,

and complete, to the best of my knowledge, and I authorize the Medicare program contractor to verify this information. If I become aware that any information in this application is not true, correct, or complete, I agree to notify the Medicare program contractor of this fact immediately."

48. Defendants were also fully aware of the requirements set forth in the Code of Federal Regulations for billing for Medicare and Supplementary Medical Insurance Benefits. This awareness was based, among other things, on information obtained by defendants in their initial and subsequent applications and re-applications for medicare certification for the "Qualium Corp" and "Amerimed Corporation" entity(ies) and in the 1500 claims forms that the defendants directed, prepared, submitted and financially benefitted from that were submitted to CMS for Medicare and Supplementary Medical Insurance Benefits. Despite this information, the defendants engaged in unlawful submission of claim for Medicare and Supplementary Medical Insurance benefits and payments and in so doing deliberately presented false claims to the United States.

49. Defendants assigned non-certified, non-licensed sleep technicians to perform both diagnostic polysomnograms and titration studies on federal health care program beneficiaries. Defendants then submitted claims for reimbursement to federal health care programs for these procedures despite knowing that it was against program regulations to do so.

50. Defendants employed numerous non-certified polysomnographic sleep technicians yet specifically did not disclose them nor the extent of their being the sole actual care provider for various sleep studies. Defendants have sought and obtained benefits as though they were properly receiving benefits and payments when they in fact were not and defendants knew that they were not.

51. All billing practices in violation of federal regulations were and are directed and ratified by defendants' submission of the CMS Medicare forms and the receipt by defendants Qualium, Amerimed, Nader and Mostowfipour of the federal government payments.

52. The true names and capacities of Does 1 through 50 are unknown to Plaintiffs, who therefore sue these Defendants by such fictitious names. Plaintiffs pray leave to amend this Complaint to show the true names and capacities of said Does when the same have been ascertained. Plaintiffs are informed and believe, and so allege, that each of said Does is responsible for Plaintiffs' damages as hereinafter alleged and described.

53. Plaintiff is informed and believes, and so alleges, that Defendants, and each of them, were at all times herein mentioned, and now are, the agents, servants, employees, and representatives of their co-defendants, and acting within the scope, purpose, and authority of such agency, service, employment, and representation, and with the permission, knowledge, and consent of their co-defendants.

54. All Defendants have formed an agreement to submit each false claim. All Defendants have committed an act in furtherance of the object of the agreement. Each Defendant has acted with the intent to defraud including as set forth herein.

55. It is based on the facts alleged in paragraphs 1 through 41 that Defendants, and each of them, are liable for all civil damages including penalties arising out of their submission of false claims.

## FIRST CAUSE OF ACTION

False Claims Act 31 U.S.C. § 3729(a)(1) by Plaintiff against All Defendants

56. Relator hereby incorporates the allegations of paragraphs 1 through 55 of this Complaint.

57. By submitting false claims, as set forth above, Defendants and each of them knowingly presented or caused to be presented, to an officer or employee of the United States a false or fraudulent claim for payment or approval.

58. As a direct, legal and proximate result of the aforesaid fraudulent conduct, Plaintiff the United States of America sustained damages in an amount to be proven at trial but believed to be in an amount in excess of $1,000,000.00.

## SECOND CAUSE OF ACTION

False Claims Act 31 U.S.C. § 3729(a)(2) against All Defendants

59. Relator hereby incorporates the allegations of paragraphs 1 through 55 of this Complaint.

60. By submitting false claims, as set forth above, Defendants and each of them knowingly presented or caused to be presented, to an officer or employee of the United States a false or fraudulent claim for payment or approval.

61. As a direct, legal and proximate result of the aforesaid fraudulent conduct, Plaintiff the United States of America sustained damages in an amount to be proven at trial but believed to be in an amount in excess of $1,000,000.00.

## THIRD CAUSE OF ACTION

Violations of False Claims Act - 31 U.S.C. § 3729(a)(2) against All Defendants)

62. Relator hereby incorporates the allegations of paragraphs 1 through 55 of this Complaint.

63. By submitting false claims, as set forth above, Defendants and each of them have knowingly made, used or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the United States.

64. As a direct, legal and proximate result of the aforesaid fraudulent conduct, Plaintiff the United States of America sustained damages in an amount to be proven at trial but believed to be in an amount in excess of $1,000,000.00.

## FOURTH CAUSE OF ACTION

Violations of False Claims Act - 31 U.S.C. § 3729(a)(3) against All Defendants

65. Relator hereby incorporates the allegations of paragraphs 1 through 55 of this Complaint.

66. By submitting false claims, as set forth above, Defendants and each of them have conspired to knowingly submit, or caused or be submitted, a false or fraudulent claim to Plaintiff the United States for payment or approval by the government.

67. As a direct, legal and proximate result of the aforesaid fraudulent conduct, Plaintiff the United States of America sustained damages in an amount to be proven at trial but believed to be in an amount in excess of $1,000,000.00.

## FIFTH CAUSE OF ACTION

Violations of False Claims Act - 31 U.S.C. § 3729(a)(7) against All Defendants

68. Relator hereby incorporates the allegations of paragraphs 1 through 55 of this Complaint.

69. By submitting false claims as set forth above, Defendants and each of them have made, used or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by Plaintiff the United States of America.

70. As a direct, legal and proximate result of the aforesaid fraudulent conduct, Plaintiff the United States of America sustained damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

Relator on behalf of the United States requests that Defendants be cited to appear and answer and upon final trial or hearing that judgment be awarded to Plaintiff and imposed upon Defendants, jointly and severally for:

i. All actual, incidental and/or consequential damages sustained by the United States of America;

ii. Treble damages pursuant to 31 U.S.C. § 3729(a);

iii. Civil penalties pursuant to 31 U.S.C. § 3729(a);

iv. (ost-judgment interest at the highest legal rates where applicable;

v. Attorneys fees, litigation expenses and costs of suit incurred herein including pursuant to 31 USC § 3729 (a) (3); and

vi. Any other remedies or relief allowable under law and/or equity.

Dated: April 3, 2012

_____
William C. Dresser, Attorney for Relator

US_Qualium\Pld\Complt.403