# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, EX. REL. ELMA F. DRESSER,<br><br>            Plaintiff,<br><br>    v.<br><br>QUALIUM CORP., et al.,<br><br>            Defendants. | Case No.  5:12-cv-01745-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS THE UNITED STATES' AMENDED COMPLAINT AND DENYING MOTION TO DISMISS DRESSER'S SECOND AMENDED COMPLAINT** |

This case involves two plaintiffs, four defendants, and five theories of Medicare fraud. Plaintiff-relator Elma Dresser and Plaintiff-intervenor the United States of America sue Defendants under the False Claims Act ("FCA"), alleging that Defendants submitted false claims to federal healthcare programs for diagnostic sleep studies and sleep disorder-related medical devices. *See* Second Amended Compl. ("SAC"), ECF 63; United States' Amended Compl. in Intervention ("FAC"), ECF 62. Defendants move to dismiss both complaints. *See* Mots., ECF 57, 58, 66, 67. The Court heard argument on these motions on May 5, 2016. For the reasons stated on the record and below, Defendants' motion to dismiss the United States' Amended Complaint is GRANTED IN PART and DENIED IN PART, with leave to amend, and Defendants' motion to dismiss Dresser's Second Amended Complaint is DENIED, but leave to amend is granted on the implied false certification claim.

## I.      BACKGROUND

In 2012, Dresser sued Defendants under the FCA. *See* Compl., ECF 1. After the United States intervened in part and filed an Intervenor Complaint, Dresser amended her complaint. *See* Compl. in Intervention, ECF 22; First Amended Compl., ECF 24. Defendants then moved to dismiss both complaints, *see* Mots., ECF 57, 58, and the United States and Dresser amended their

complaints.  *See* FAC, SAC.

**A. United States' Claims**

Defendants Tahereh Nader and Anooshiravan Mostowfipour own and operate Defendants Qualium Corp. and Amerimed Corp.  *See* FAC ¶¶ 12-13.  Qualium owns a chain of California clinics, doing business as Bay Sleep Clinic, that provides diagnostic services and treatment for sleep disorders.  *See id.* ¶ 10.  Qualium, doing business as CPAP Specialist, also dispenses durable medical equipment ("DME"), specifically sleep disorder-related devices. *See id.* ¶¶ 4, 11. Amerimed also provides diagnostic services and treatment for sleep disorders, and dispenses DME products.  *See id.* ¶ 14.  In its Amended Complaint, the United States alleges that from April 4, 2002 to the present, Defendants engaged in a scheme to violate Medicare rules in three ways: first, by conducting sleep and titration tests in locations that had not been approved by Medicare; second, by employing unqualified personnel to conduct those tests; and third, by dispensing DME to Medicare patients based on those tests, and/or from unapproved locations, and/or by an unapproved provider.  *See id.* ¶ 90.

**1. Unapproved Locations**

Defendants have twenty sleep clinics, but enrolled only two of them as Medicare-approved Independent Diagnostic Testing Facilities ("IDTF").  *See id.* ¶¶ 47, 93, 94.  Defendants did not apply to enroll the other 18 clinic locations as Medicare-approved IDTFs.  *See id.* ¶ 98.  Even if Defendants had applied to enroll those locations, however, they would not have been approved, because they did not post and maintain regular business hours, as required for Medicare IDTFs. *See id.* ¶ 100.  Under Medicare regulations, each IDTF practice location must be enrolled in order to bill Medicare.  *See Implementation of New Compliance Standards for Independent Diagnostic Testing Facilities (IDTFs)*, CMS Manual System, Pub. 100-08, Transmittal 216 (July 13, 2007), at 4.19.1(B).  Defendants nonetheless performed sleep tests on Medicare beneficiaries in the 18 unapproved clinics, and then submitted payment claim forms that falsely stated that the tests had occurred at one of the two approved clinics.  *See* FAC ¶¶ 95, 96.  By signing and submitting the payment claim forms, Defendants expressly certified that their claims for payment complied with Medicare laws, regulations, and program instructions, and that they were true, accurate, and

2

United States District Court
Northern District of California

complete.  *See id.* ¶ 97.

### 2.   Unqualified Personnel

In addition to conducting tests in unapproved clinics, Defendants used unlicensed personnel to conduct those tests, concealed this fact from Medicare, and submitted claims for diagnostic tests that were not performed by licensed or certified technologists.

In order to bill Medicare, personnel performing sleep tests at IDTFs must be licensed or certified.  *See* 42 C.F.R. §§ 410.33(c), (g); *Implementation of New Compliance Standards for Diagnostic Testing Facilities (IDTFs)*, CMS Manual System, Pub. 100-08, Transmittal 216 (July 13, 2007).  Defendants, however, knowingly and deliberately employed at least 30 individuals who were not licensed or registered to perform sleep and titration tests, because they believed that employing licensed or registered sleep technicians was too expensive.  *See* FAC ¶¶ 111, 121.  The unlicensed, unregistered employees performed sleep and titration tests on Medicare beneficiaries and Defendants then submitted payment claim forms for these tests.  *See id.* ¶¶ 104-05, 121.

Defendants also concealed the identities of their unlicensed employees.  *See id.* ¶ 108.  Medicare requires IDTFs to submit a Medicare Enrollment Application, Form CMS-855B, which provides information to determine whether the IDTFs meet all of the standards for IDTFs.  *See id.* ¶¶ 55-56.  Section D of Attachment 2 to the CMS-855B requires the supplier to list all non-physician personnel who perform tests at that IDTF and attach copies of their state licenses or certificates.  *See* CMS 855-B, FAC, Ex. 1 at US0000835, ECF 62-1.  In July 2010, Defendants submitted a CMS-855B to update the location of their Los Gatos clinic, and despite employing several unlicensed employees to perform tests, Defendants listed only two technicians on their CMS-855B and omitted the unlicensed employees.  *See* FAC ¶ 110.   In January 2012, Defendants submitted a CMS-855B to re-validate the enrollment of their San Francisco clinic, and similarly listed only two technicians on their CMS-855B.  *See id.* ¶ 108-09.

### 3.   DME Dispensing

In addition to performing sleep tests, Qualium and Amerimed also dispensed sleep disorder-related DME to Medicare beneficiaries from unapproved locations and in violation of the payment prohibition.  *See id.* ¶ 122.  Qualium was approved by Medicare to dispense DME only

3

from its Los Gatos clinic location. *See id.* ¶ 123. Qualium dispensed DME from other Bay Sleep clinic locations, however, and falsely represented on the Medicare claim forms that the DME had been dispensed from the approved Los Gatos location. *See id.* ¶¶ 128, 131. Amerimed, meanwhile, dispensed DME to Medicare beneficiaries even though it was not approved by Medicare to do so, and obtained reimbursement from Medicare by having Qualium submit claim forms stating that Qualium, not Amerimed, had dispensed the DME. *See id.* ¶¶ 124-25. Finally, by dispensing DME while also providing sleep tests, Defendants violated the payment prohibition in 42 C.F.R. § 424.57(f), which provides that "No Medicare payment will be made to the supplier of a CPAP device if that supplier, or its affiliate, is directly or indirectly the provider of the sleep test used to diagnose the beneficiary with obstructive sleep apnea." Defendants performed sleep and titration tests at clinics that were not approved by Medicare and not attended by appropriately qualified technicians, dispensed DME from those same clinics, and submitted claims to Medicare that violated the payment prohibition. *See FAC* ¶¶ 132-35.

Based on these allegations, the United States raises four causes of action: (1) presentation of false claims under the FCA, 31 U.S.C. §§ 3729(a)(1), (a)(1)(A); (2) using false statements to get false claims paid under the FCA, 31 U.S.C. §§ 3729(a)(2), (a)(1)(B); (3) payment by mistake; and (4) unjust enrichment. *See FAC* ¶¶ 140-54.

### B. Dresser's Claims

Following the United States' intervention on the above allegations, Dresser separately alleges that Defendants engaged in a scheme to violate Medicare rules in two more ways: first, by using unlicensed personnel to dispense DME and fraudulently obtaining licenses for unlicensed employees to dispense DME; and second, by giving kickbacks to doctors in exchange for patient referrals. *See SAC* ¶¶ 71-85.

#### 1. DME Dispensing

Dresser alleges that Qualium hired and directed unlicensed employees to dispense DME and fraudulently obtained licenses for unqualified employees to dispense DME. *See id.* ¶ 71. Dresser identifies one employee, Carolyn Dubbel, who dispensed DME from the Menlo Park location, which was not enrolled in Medicare, even though she initially was unlicensed. *See id.*

While Dresser worked at Qualium, Nader signed license applications for employees that falsely stated that the employees had worked in the business for a year, as required by California law. *See id.* ¶ 73; Cal. Health & Safety C. § 111656.4. Many of the employees, however, had not worked for the required year, and the work they had done consisted of dispensing DME without a license and without a licensed dispenser on the clinic premises. *See id.* Among the ranks of the unlicensed personnel who dispensed DME are Soosan Mostowfipour (Mostowfipour's sister), Sina Nader (Nader's son), Aline Smith (Nader's housekeeper), Mersiha Begovic, Dr. Moiz (first name unknown), Jasmin (last name unknown), Lora (last name unknown), Nermina Donka, Jackie Floyd, Erica Vega, and Anel Catic. *See* SAC ¶ 73. When submitting claim forms for DME dispensed by unlicensed employees, Defendants stated that one of their few licensed employees had dispensed the DME. *See id.* ¶ 74.

### 2. Anti-Kickback Statute

Dresser also alleges that Defendants paid physicians for referring patients to Defendants' sleep clinics, in violation of the Anti-Kickback Statute. *See id.* ¶¶ 1, 76; 42 U.S.C. § 1320a-7b(b). Defendants directed their employees to give payments to Dr. William Lewis and Dr. David Arnstein. *See* SAC ¶ 76. The doctors received $100 for each patient they referred to Defendants for sleep tests. *See id.* The payments were nominally for patient consultations that the doctors gave Defendants' patients after Defendants had conducted sleep tests on those patients, but in actuality, the doctors were paid whether or not they provided the consultation and whether or not they had expertise in reading sleep studies. *See id.* From 2008 to 2013, Lewis and Arnstein referred at least seven Medicare beneficiary patients to Bay Sleep Clinic for sleep tests. *See id.*

Based on these allegations, Dresser raises one cause of action under the FCA, 31 U.S.C. §§ 3729(a)(1)-(2), 31 U.S.C. §§ 3729(a)(1)(A)-(B). *See id.* ¶¶ 103-109.

Defendants renew their motions to dismiss the United States' Amended Complaint and Dresser's Second Amended Complaint. *See* Mots., ECF 66, 67.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

United States District Court
Northern District of California

556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008). The Court "need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Because they involve allegations of fraud, *qui tam* actions under the FCA must meet the particularity requirements of Rule 9. *See Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Rule 9 requires only that the circumstances of fraud be stated with particularity; other facts may be pled generally or in accordance with Rule 8. *See Iqbal*, 556 U.S. at 686-87; *Meijer, Inc. v. Ferring B.V. (In re DDAVP Direct Purchaser Antitrust Litig.)*, 585 F.3d 677, 695 (2d Cir. 2009), *cert. denied*, 130 S. Ct. 3505 (2010).

## III.    DISCUSSION

When Defendants moved to dismiss, a case on implied false certification under the False Claims Act was pending before the Supreme Court. *See Universal Health Servs. v. U.S. ex rel. Escobar*, 136 S. Ct. 582 (Mem.) (2015). The Supreme Court recently issued its ruling and so this Court fully considers the holding of *Universal Health Services* in adjudicating the Motions to Dismiss. *See Universal Health Servs. v. United States*, 579 U.S. ___, 2016 WL 3317565 (2016).

### A.  Motion to Dismiss United States' Amended Complaint

Defendants initially moved to dismiss the United States' Complaint. *See* Mot., ECF 57. After the United States amended its pleadings, Defendants renewed their motion to dismiss. *See* Mot., ECF 66. The renewed motion incorporates the earlier motion by reference and lists the changes in the amended pleadings, but does not present any new arguments. The initial motion is DENIED as moot and the renewed motion is GRANTED IN PART and DENIED IN PART, as explained below.

Defendants move to dismiss the United States' Amended Complaint because it relies on a

theory of implied false certification and does not allege false claims; intentional, palpable lies; materiality; or claims on the government fisc with sufficient plausibility or particularity. *See* Mot. at 18-24, ECF 57. Defendants also argue that the six-year statute of limitations period should apply. *See id.* at 24-25.

### 1. False Certification Theories

Defendants argue that the United States' claims are based on the implied false certification theory of liability. *See id.* at 10-11. The United States counters that its claims are based on the literally false, express false certification, and fraud in the inducement theories of liability as well as implied false certification. *See* Opp. at 7-15. The United States also argues that to the extent it relies on implied false certification, those allegations are sufficiently pled. *See id.* at 14-15. The Court finds that the Amended Complaint sufficiently alleges claims based on the literally false, express false certification, and fraud in the inducement theories, but that the implied false certification claim does not meet the newly articulated *Universal Health Services* standard.

### a. Literally False Certification Theory

There are several theories of liability under the FCA. The literally false theory says that an FCA action may lie where "the claim for payment is itself literally false or fraudulent." *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1170 (9th Cir. 2006). The United States argues that the unapproved location and the DME allegations are literally false. *See* Opp. at 7-8. The Amended Complaint alleges that Defendants performed sleep tests in unapproved clinics, and then stated on the payment claim forms for those tests that the tests had been performed in one of the approved clinic locations. *See* FAC ¶¶ 95-96. With respect to the DME, the Amended Complaint alleges that Defendants dispensed DME from unapproved clinic locations and falsely stated on the claim forms that the DME had been dispensed from the approved Los Gatos location. *See id.* ¶¶ 128, 131. The Amended Complaint also alleges that Defendants dispensed DME through Amerimed, which was not Medicare-approved, and stated on the claim forms that Qualium had dispensed the DME. *See id.* ¶¶ 124-25. Finally, Defendants' practice of dispensing DME violated Medicare's payment prohibition, which bars DME suppliers from receiving Medicare payments if they both provide sleep tests and distribute DME. *See* 42 C.F.R. § 424.57(f); FAC ¶ 132.

United States District Court
Northern District of California

7

1    Defendants nonetheless knowingly submitted claims for those DME, even though those claims

2    were not payable.  *See* FAC ¶ 134.  The claim forms for the sleep tests and the DME are literally

3    false, because they contained lies about where the tests were performed, where the DME were

4    distributed, and who dispensed the DME.  They also requested payment for DME that were not

5    legally reimbursable.  Because the claim forms themselves contained lies, these claims present an

6    "archetypal *qui tam* False Claims action."  *Hendow*, 461 F.3d at 1170.  The literally false claims

7    are sufficiently pled.

**b.  Express False Certification Theory**

9         Express false certification occurs when there is (1) a false certification or statement of

10   compliance with a government regulation, (2) made with scienter, (3) that is "material to the

11   government's decision to pay out moneys to the claimant" and (4) the claim asks for payment

12   from the government fisc.  *Id.* at 1171-73.  The United States argues that the unqualified

13   technician allegations raise liability under express false certification, because Defendants

14   expressly certified they were in compliance with Medicare regulations when they submitted

15   payment claims.  *See* Opp. At 8-10.  The Amended Complaint alleges that when Defendants

16   submitted payment claims for reimbursement, they used the CMS-1500 form.  *See* FAC ¶¶ 35,

17   145.  Page three of the CMS-1500 states that by "submitting this claim for payment from federal

18   funds," the supplier "certif[ies] that . . . 4) this claim . . . complies with all applicable Medicare

19   and/or Medicaid laws, regulations, and program instructions for payment . . . ."  CMS-1500, FAC,

20   Ex. 3 at 3, ECF 62-3; *see also* FAC ¶ 36.  Medicare requires that personnel performing sleep tests

21   at IDTFs be qualified to do so.  *See* 42 C.F.R. § 410.33(c); FAC ¶ 64.  The Amended Complaint

22   alleges that Defendants knowingly hired unqualified, unlicensed sleep technicians because they

23   were cheaper than licensed or registered sleep technicians, and Defendants submitted payment

24   claim forms for sleep tests performed by these unlicensed technicians.  *See* FAC ¶¶ 104-05, 111,

25   114, 121.  This satisfies the elements of express false certification: by submitting the CMS-1500,

26   Defendants falsely certified that they had complied with Medicare regulations, even though they

27   were not complying with the personnel qualification requirement, and they made this false

28   certification knowingly.  The certification was material to the government's decision to reimburse

United States District Court
Northern District of California

1   Defendants for their claims, because Medicare would only pay for sleep and titration tests

2   performed by licensed or registered sleep technicians.  *See* FAC ¶ 115.  Finally, the claims asked

3   for reimbursement, which Defendants received.  *See id.* ¶ 121.  The express false certification

4   claim is sufficiently pled.

5                           **c.  Fraud In The Inducement Theory**

6           Fraud in the inducement, also known as promissory fraud, does not specifically require a

7   false statement of compliance with government regulations.  *See Hendow*, 461 F.3d at 1173.

8   Instead, it "holds that liability will attach to each claim submitted to the government under a

9   contract, when the contract or extension of government benefit was originally obtained through

10  false statements or fraudulent conduct."  *Id.*  The United States argues that the unqualified

11  technician allegations also raise liability under fraud in the inducement, because Defendants made

12  false statements and acted fraudulently in the CMS-855B forms they submitted for the Los Gatos

13  and San Francisco clinics.  *See* Opp. At 10-11.  The CMS-855B is the Medicare Enrollment

14  Application for IDTFs, and clinics must submit it to establish eligibility to participate in Medicare,

15  or to update their information or revalidate Medicare enrollment.  *See* FAC ¶ 29; CMS-855B,

16  FAC, Ex. 1, ECF 62-1.  By signing the CMS-855B, a supplier certifies that the information in the

17  form is "true, correct, and complete."  *Id.* at US0000821.  Although Section D of Attachment 2 to

18  the CMS-855B requires the supplier to list all non-physician personnel who perform tests,

19  Defendants did not list several unlicensed, non-physician personnel on the CMS-855Bs they

20  submitted to update the location of their Los Gatos clinic and to re-validate the enrollment of their

21  San Francisco clinic.  *See* FAC, Ex. 1 at US0000835; FAC ¶¶ 108-10.  The Amended Complaint

22  alleges that Defendants deliberately made these omissions because they knew that Medicare would

23  only pay for tests performed by licensed or registered personnel.  *See* FAC ¶ 115.  Because

24  Defendants obtained their continued Medicare enrollment through false statements and fraudulent

25  conduct on their CMS-855Bs, liability attaches to each claim they submitted under the fraud in the

26  inducement theory.  The fraud in the inducement allegations are sufficiently pled.

27                           **d.  Implied False Certification Theory**

28          Implied false certification, as recently established by the Supreme Court, occurs where (1)

United States District Court
Northern District of California

9

United States District Court
Northern District of California

there is a claim that "does not merely request payment, but also makes specific representations about the goods or services provided;" and (2) "the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *See Universal Health Servs.*, 579 U.S. __, 2016 WL 3317565, at *9 (2016). The misrepresentation "must be material to the Government's payment decision in order to be actionable under the False Claims Act," and the "materiality standard is demanding." *Id.* at *11-12. *Universal Health Services* emphasized that different types of misrepresentations may be proof of materiality, but are not per se material. For example, the government's decision to "expressly identify a provision as a condition of payment is relevant, but not automatically dispositive" of materiality. *Id.* at *12. Proof of materiality may also include evidence that the defendant knows that the government consistently refuses to pay claims based on noncompliance with a statutory, regulatory, or contractual requirement—but "that the Government would have the option to decline to pay if it knew of the defendant's noncompliance" is not sufficient for a finding of materiality. *Id.* Conversely, if the government consistently pays claims despite knowing that certain requirements were violated, "that is very strong evidence that those requirements are not material." *Id.* Nor can materiality be found "where noncompliance is minor or insubstantial." *Id.*

The United States argues that implied false certification provides an alternate and independent basis for FCA liability. *See* Opp. at 14-15. This theory is based on Defendants' certifications in their Medicare enrollment forms that they would abide by Medicare laws, regulations, and program instructions, and that they understood that payment of a claim was conditioned on the claim being compliant with Medicare laws, regulations, and program instructions. *See id.* The Amended Complaint alleges that Defendants submitted claims for payment and knowingly failed to disclose their noncompliance with Medicare regulations. The Amended Complaint alleges in several places that the government would not have paid Defendants' claims had they known of Defendants' fraudulent conduct, but does not explain why. *See, e.g.*, FAC ¶¶ 2, 73, 97, 126. This does not meet *Universal Health Services*' heightened materiality standard: While *Universal Health Services* held that payment being conditioned on compliance with regulations could be evidence that a misrepresentation was material, it also

explained that this did not necessarily make a misrepresentation material.  579 U.S. __, 2016 WL 3317565, at *12.

When the Amended Complaint was drafted, the United States did not have the benefit of *Universal Health Services*' guidance on materiality.  In its opposition, the United States comments that its case is not dependent on implied false certification.  *See* Opp. at 7.  To the extent that the United States wishes to pursue this theory, its pleading is inadequate and so the Court GRANTS IN PART Defendants' motion to dismiss the United States' Amended Complaint only as to the implied false certification claims, with leave to amend.

### 2.  False Claims

Defendants argue that the Amended Complaint does not satisfy *Twombly* and *Iqbal*'s plausibility requirement or Rule 9(b)'s particularity requirement because it pleads only non-actionable regulatory violations and does not set forth the role of each Defendant.  *See* Mot. at 17-20.  Defendants argue that the allegations about the unapproved clinic locations are conclusory and sweeping; that the allegations about the unqualified technicians do not allege that Defendants failed to submit documentation verifying the IDTF supervisory physicians' proficiency or that Defendants' unqualified employees did not become licensed after being hired; and that the allegations about the DME dispensing are insufficient as to Amerimed and fail to identify specific instances where Defendants dispensed DME from unapproved locations, how many hours the clinics were open, and instances where Defendants provided both sleep tests and DME to beneficiaries.  *See id.* at 18-20.  None of these arguments is availing.

First, Defendants argue that the United States pled only non-actionable regulatory violations, citing *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996).  *See* Mot. at 18-20.  *Anton* held that "[m]ere regulatory violations do not give rise to a viable FCA action.  This is particularly true here where regulatory compliance was not a *sine qua non* of receipt of state funding."  Defendants do not explain, however, why the United States' allegations are only mere regulatory violations.  As discussed above, they give rise to a viable FCA action based on literally false, fraud in the inducement, and express false certification theories.  *Anton* does not apply here, either, because Medicare payment and billing privileges are conditioned on compliance with the

11

Medicare regulations at issue in this case.  *See* 42 C.F.R. § 410.33(h) (revoking billing privileges if the provider fails to meet IDTF certification standards, located in 42 C.F.R. § 410.33(g)).  Whether that is sufficient to make out an implied false certification case is a separate question under *Universal Health Services*, but *Anton* does not bar the United States' claims.

Second, Defendants also argue that the Amended Complaint does not set forth the role of each Defendant.  *See* Mot. at 17-20.  But the United States sufficiently alleges that a unity of interest and ownership exists between and among the Defendants and that Qualium and Amerimed are alter egos of Mostowfipour and Nader, who control the companies' business and daily operations.  *See* FAC ¶¶ 10-20.  Defendants do not challenge these allegations.  Furthermore, a complaint satisfies Rule 9(b) if it adequately alleges that the employees of the company "oversaw or actively participated in the alleged fraudulent scheme," *United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011), and the Amended Complaint does so.  *See* FAC ¶¶ 12-13, 15-18, 31, 33, 102, 108, 111.

Third, Defendants state that the unapproved clinic allegations are "conclusory" and "sweeping," but do not present any argument supporting this position.  Mot. at 18.  Their bare, conclusory statement is insufficient.

Fourth, Defendants challenge the unqualified technician allegations on the basis that the United States does not allege that Defendants failed to submit documentation verifying the IDTF supervisory physicians' proficiency or that Defendants' unqualified employees did not become licensed after being hired.  *See id.* at 19.  These arguments are irrelevant to the sufficiency of the Amended Complaint.  Medicare regulations require that any non-physician personnel used by an IDTF to perform tests must be licensed or certified.  *See* 42 C.F.R. § 410.33(c); FAC ¶ 64.  The United States alleges in great detail that Defendants knowingly hired and used unlicensed and uncertified non-physician personnel to perform tests and submitted claims for those tests.  *See* FAC ¶¶ 111, 114-15, 117, 121.

However, even if the unqualified technician allegations focused entirely on the allegations that Defendants made false representations about their personnel on their CMS-855Bs, the Amended Complaint would be sufficient.  The Centers for Medicare & Medicaid Services

1  ("CMS") Manual states that "each IDTF must certify on its CMS-855B enrollment application"

2  that it "[p]rovides complete and accurate information on its enrollment application."

3  *Implementation of New Compliance Standards for Independent Diagnostic Testing Facilities*

4  *(IDTFs)*, CMS Manual System, Pub. 100-08, Transmittal 216 (July 13, 2007), at 4.19.1(B); FAC ¶

5  58.  Section D of Attachment 2 to the CMS-855B requires the supplier to list all non-physician

6  personnel who perform tests at that IDTF and attach copies of their state license or certificate.  *See*

7  CMS-855B, FAC, Ex. 1 at US0000835, ECF 62-1.  Defendants submitted CMS-855Bs for Los

8  Gatos and San Francisco in 2010 and 2012 and despite the requirement to certify that they

9  provided complete and accurate information, Defendants failed to list the many unlicensed, non-

10  physician personnel who performed tests at the Los Gatos and San Francisco IDTFs.  *See* FAC ¶¶

11  108-110.  What Defendants claim the United States did not allege is irrelevant in the face of the

12  sufficiency of what the United States did allege.

13  Fifth, Defendants argue that the DME dispensing allegations are insufficient as to

14  Amerimed and furthermore, that the United States fails to allege specific instances where

15  Defendants dispensed DME from unapproved locations, how many hours the clinics were open,

16  and instances where Defendants provided both sleep tests and DME to beneficiaries.  *See* Mot. at

17  19-20.  None of these arguments is successful, either.  The allegations against Amerimed are

18  sufficient—the Amended Complaint alleges that Amerimed distributed DME to Medicare

19  beneficiaries despite being unapproved to do so, and that Qualium then submitted false claims to

20  Medicare for that DME.  *See* FAC ¶¶ 124-26.

21  As for Defendants' other arguments on the DME dispensing allegations, Rule 9(b) requires

22  only that the circumstances of fraud be stated with particularity; other facts may be pled generally

23  or in accordance with Rule 8.  *See Iqbal*, 556 U.S. at 686-87; *Meijer, Inc.*, 585 F.3d at 695.  The

24  Amended Complaint meets this standard and identifies "the who, what, when, where, and how of

25  the misconduct charged," and "what is false or misleading about [the purportedly fraudulent]

26  statement, and why it is false."  *Ebeid*, 616 Fe.d at 998.  The Amended Complaint alleges that

27  Defendants (the who) made false claims for DME dispensing (the what) by dispensing DME from

28  unapproved, non-compliant locations in violation of the payment prohibition and submitting false

claims stating that the DME had been dispensed from approved locations (the how).  *See* FAC ¶¶

122-35.  Exhibit 5 to the Amended Complaint is a 500-page spreadsheet listing every false claim

identified by the United States at the date of filing, and it provides the patient name, date of

service, and amount of payment by Medicare to Defendants.  *See id.* ¶ 139; FAC, Ex. 5.[1]  The

spreadsheet thus specifically identifies the date of each claim (the when) and the National Provider

Identifier ("NPI"), or location code, for the clinic associated with the claim (the where).  *See* FAC

¶ 139; FAC, Ex. 5.  No more is necessary at the pleading stage.

### 3.  Intentional, Palpable Lies

Defendants argue that the United States did not sufficiently allege *scienter* and did not

allege any "intentional, palpable lie."  Mot. at 20.  Defendants support their argument by saying

that the United States did not say that tests performed in unapproved locations were billed as if

they had occurred in the approved San Francisco and Los Gatos locations; that it is not reasonable

to infer that the Defendants deliberately omitted their unqualified technicians from their CMS-

855B forms; and that the United States did not allege with sufficient detail how Defendants

directed their employees to violate DME rules and regulations.  *See id.* at 20-21.  But even a brief

glance at the Amended Complaint reveals that these arguments lack merit.

First, Defendants are incorrect in asserting that the United States must allege a "palpably

false statement."  The FCA provides independent bases for liability for false claims and false

statements.  *See* 31 U.S.C. §§ 3729(a)(1)(A), (B).

Second, the United States explicitly alleges that after performing sleep tests at unapproved

locations, "Defendants then falsely stated on their payment claim forms that the tests had occurred

at either the San Francisco or Los Gatos approved locations."  FAC ¶ 95.  The United States also

explicitly alleges that "Defendants deliberately concealed the identities of [their] unqualified and

unlicensed employees that were performing tests by not listing them on Form CMS-855B, as

required."  *Id.* ¶ 108.  It is entirely reasonable to infer that Defendants did so deliberately, because

it is an elementary principle of first year civil procedure that when considering a motion to

---

[1] The spreadsheet is excerpted at ECF 62-5.

United States District Court
Northern District of California

dismiss, the Court "construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031.  Finally, as for the DME dispensing allegations, the United States explicitly alleges that "Defendants . . . directed their employees to pick up the DME from the Los Gatos location and take it to other locations," where patients could pick them up.  FAC ¶ 128.  The United States specifically identifies five claims where Defendants billed Medicare for DME supplied from unapproved locations.  *See id.* ¶ 138.  The United States explicitly alleges that that Defendants did not keep their clinics open the minimum thirty hours per week and that Defendants "simultaneously provided sleep tests and DME to beneficiaries in violation of the payment prohibition."  *Id.* ¶¶ 130, 132.  The Ninth Circuit has made clear that this level of detail satisfies Rule 9(b); what is required is "enough detail 'to give [Defendants] notice of the particular misconduct which is alleged to constitute the fraud charged so that [they] can defend against the charge and not just deny that [they have] done anything wrong."  *Ebeid*, 616 F.3d at 999 (quoting *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051-52 (9th Cir. 2001)).  Contrary to Defendants' position, *Ebeid* explicitly rejected the notion that the complaint must allege "all facts supporting each and every instance" of billing submitted in violation of the relevant statute. 616 F.3d at 999.

### 4.  Materiality

Defendants argue that the United States' claims are based on implied false certification, and so the United States must identify the Medicare regulations that serve as a basis for implied false certification.  *See* Mot. at 21-24.  As discussed above, the Court has found that the United States' claims are not based only on implied false certification.  *See supra* at 7-11.  To the extent that the Amended Complaint relies on an implied false certification theory, the United States has not sufficiently pled materiality and is granted leave to amend.  *See id*.

### 5.  Alleged Claims

Defendants' next argument regarding Rule 9(b) deficiencies repeats the particularity argument, claiming that the United States did not sufficiently allege the details of a scheme to submit false claims or provide enough indicia to create a strong inference that claims were actually submitted.  *See* Mot. at 24.  But the Amended Complaint does precisely what Defendants say it

United States District Court
Northern District of California

1  does not.  *See supra* at 8 (the Amended Complaint alleges alter ego liability and sets forth the role

2  of each Defendant); *supra* at 11 (the Amended Complaint alleges that tests were billed as if they

3  had occurred at approved locations); FAC ¶¶ 104-05, 121 (allegations that unlicensed technicians

4  performed tests); *id.* ¶¶ 136-39; FAC, Ex. 5 (identifying several hundred claims that were paid).

### 6.  Statute of Limitations

6      Defendants' final argument against the United States is that the six-year statute of

7  limitations applies.  *See* Mot. at 24-25.

8      31 U.S.C. § 3731(c) provides that when the United States intervenes, it may file its own

9  complaint.  If the intervenor complaint arises out of the same conduct, transactions, or occurrences

10  set forth in the original complaint, the intervenor complaint will relate back to the filing date of the

11  original *qui tam* complaint for statute of limitations purposes.  *See id.*  The United States' claims

12  arise out of the same conduct set forth in Dresser's original complaint, and so the Amended

13  Complaint relates back to April 4, 2012, the filing date of Dresser's original complaint.  *See* ECF

14  1.

15      31 U.S.C. § 3731(b) provides that an FCA action must be brought within the later of either

16  six years of a violation or three years of the date by which the United States should have known

17  about the violation.  But 31 U.S.C. § 3731(b)(2) "tolls the statute of limitations until the facts

18  underlying the fraud are or should have been discovered by 'the official of the United States

19  charged with responsibility to act in the circumstances,' up to a maximum of ten years."  *U.S. ex*

20  *rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1216 (9th Cir. 1996) (discussing legislative history

21  and quoting Section 331(b)(2)).  Because the United States did not know of Defendants' conduct

22  before Dresser filed her complaint on April 4, 2012, Section 3731(b)(2)'s tolling provision applies

23  and the United States may pursue claims submitted on or after April 4, 2002.  Moreover, the

24  statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c), and "[d]ismissal under

25  Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some

26  obvious bar to securing relief on the face of the complaint."  *ASARCO, LLC v. Union Pac. R. Co.*,

27  765 F.3d 999, 1004 (9th Cir. 2014).  Because Defendants' arguments on the statute of limitations

28  "raises disputed issues of fact" as to when the United States knew or should have known of

1    Defendants' conduct, "dismissal under Rule 12(b)(6) is improper." *ASARCO*, 765 F3.d at 999.

2    **B.  Motion to Dismiss Dresser's Second Amended Complaint**

3        Defendants initially moved to dismiss Dresser's First Amended Complaint.  *See* Mot., ECF

4    58.  After Dresser amended her pleadings, Defendants renewed their motion to dismiss.  *See* Mot.,

5    ECF 67.  The renewed motion incorporates the earlier motion by reference and lists the changes in

6    the amended pleadings, but does not present new arguments.  The first motion thus is DENIED as

7    moot and the renewed motion is DENIED, as explained below.

8        Defendants move to dismiss Dresser's Second Amended Complaint because the United

9    States intervened, and because it relies on a theory of implied false certification and does not

10   allege false claims; intentional, palpable lies; materiality; or claims on the government fisc with

11   sufficient plausibility or particularity.  *See* Mot. at 13-23, ECF 58.  Defendants also argue that the

12   six-year statute of limitations period should apply, and that the Court lacks jurisdiction over

13   Dresser's claims because she is not the original source of the information in this case.  *See id.* at

14   23-25.

15           **1.  Intervened Claims**

16       Dresser's Second Amended Complaint contains allegations supporting both the claims the

17   United States intervened on and the claims that Dresser is pursuing alone.  Because the United

18   States has partially intervened, its Amended Complaint is the operative complaint for the

19   intervened claims.  *See* 31 U.S.C. § 3730(c)(1); *United States ex rel. Sansbury v. LB & B*

20   *Associates, Inc.*, 58 F. Supp. 3d 37, 47 (D.D.C. 2014) ("[B]y automatic operation of [the FCA],

21   the Government's complaint in intervention becomes the operative complaint as to all claims in

22   which the government has intervened."); *U.S. ex rel. Feldman v. City of New York*, 808 F. Supp.

23   2d 641, 648 (S.D.N.Y. 2011) (same).  The allegations in the Second Amended Complaint are

24   operative only as to the claims that Dresser is pursuing on her own, regarding Defendants' alleged

25   use of unlicensed employees to dispense DME and Defendants' alleged violation of the Anti-

26   Kickback Statute.

27       Defendants argue that if Dresser has any claims that overlap with the United States'

28   claims, those claims should be dismissed because Dresser has no cause of action under the FCA

United States District Court
Northern District of California

17

1    once the United States intervenes, and her allegations are insufficiently pled.  *See* Reply at 3-5,

2    ECF 73; Mot. at 13-22.  Defendants' view of the FCA is contrary to the text of the statute, which

3    gives relators the right to continue as a party to an FCA action even when the United States

4    chooses to intervene.  *See* 31 U.S.C. § 3730(c)(1).  As for the sufficiency of Dresser's allegations

5    on the intervened claims, Defendants' arguments are moot because the United States' allegations,

6    not Dresser's allegations, control as to the intervened claims.

### 2.  False Certification Theories

8         Defendants argue that Dresser's claims that are separate from the United States' claims are

9    based on the implied false certification theory of liability.  *See* Mot. at 13-14.  They say that

10   Dresser's claims do not meet the standard for implied false certification, but give no explanation

11   as to why.  *See id.* at 14.  Dresser counters that her Anti-Kickback Statute allegations and DME

12   dispensing allegations plead false claims.  *See* Opp. at 6-11.

13        Dresser's allegations raise claims under the express false certification and literally false

14   theories of liability.  Express false certification occurs when there is (1) a false certification or

15   statement of compliance with a government regulation, (2) made with scienter, (3) that is "material

16   to the government's decision to pay out moneys to the claimant" and (4) the claim asks for

17   payment from the government fisc.  *Hendow*, 461 F.3d at 1171-73.  The literally false theory says

18   that a False Claims action may lie where "the claim for payment is itself literally false or

19   fraudulent."  *Id.* at 1170.

20        Dresser has adequately pled express false certification claims as to both the Anti-Kickback

21   Statute and DME dispensing allegations.  Dresser alleges that Defendants engaged in a kickback

22   referral scheme with Dr. Lewis and Dr. Arnstein, where the doctors received $100 for each patient

23   they referred to Defendants for sleep tests.  *See* SAC ¶ 76.  Defendants received several patient

24   referrals from these doctors and submitted payment claim forms to Medicare for sleep tests

25   performed on those patients.  *See id.*  The CMS-1500 payment claim form states that by

26   "submitting this claim for payment from federal funds," the supplier "certif[ies] that . . . 4) this

27   claim . . . complies with all applicable Medicare and/or Medicaid laws, regulations, and program

28   instructions for payment including but not limited to the Federal anti-kickback statute . . . ."

United States District Court
Northern District of California

18

1   CMS-1500, FAC, Ex. 3 at 3, ECF 62-3.  When Defendants submitted claim forms for the sleep

2   tests they performed on patients they had obtained by paying a kickback to the referring

3   physicians, Defendants expressly and falsely certified that the claims were compliant with the

4   Anti-Kickback Statute when they were not.

5          As for the DME dispensing allegations, Dresser alleges that several of the DME dispensers

6   did not meet state licensing requirements for dispensing DME, but Defendants nonetheless signed

7   license applications for these employees, falsely stating that the employees met the requirements.

8   *See* SAC ¶ 73.  By submitting claim forms for DME dispensed by unlicensed or improperly

9   licensed employees, Defendants expressly certified that the claims "complie[d] with all applicable

10  Medicare and/or Medicaid laws, regulations, and program instructions for payment . . . ."  CMS-

11  1500, FAC, Ex. 3 at 3.  Medicare conditions billing privileges on compliance with state

12  credentialing requirements, however, and by having unlicensed employees distribute DME and by

13  signing license applications that falsely stated that employees met California's one-year work

14  requirement, Defendants were noncompliant with California's credentialing requirements.  *See*

15  SAC ¶¶ 47, 71, 73; *see also* Cal. Health & Safety Code § 111656.4(a).

16         The DME dispensing allegations also present literally false claims: Dresser alleges that

17  Defendants had unlicensed employees distribute DME, but stated on claim forms that other

18  employees, who were licensed, had dispensed the DME.  *See* SAC ¶ 74.  The payment claim

19  forms submitted for these DME thus are literally false.  Moreover, the CMS-1500 states that "by

20  submitting this claim for payment from federal funds," the supplier "certif[ies] that . . . 1) the

21  information on this form is true, accurate and complete . . . ."  CMS-1500, FAC, Ex. 3 at 3.  The

22  claims Defendants submitted, however, contained untrue and inaccurate information as to who had

23  dispensed the DME.

24         To the extent that Dresser wishes to proceed on an implied false certification theory, she

25  has not adequately pled materiality under the *Universal Health Services* standard, which is

26  described above.  *See supra* at 9-11.  Leave to amend is granted on that basis alone, but

27  amendment is not necessary if Dresser wishes to proceed only on her express false certification

28  and literally false claims.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3. False Claims

Defendants next argue that the Second Amended Complaint does not satisfy *Twombly* and *Iqbal*'s plausibility requirement or Rule 9(b)'s particularity requirement because it pleads only non-actionable regulatory violations and does not set forth the role of each Defendant. *See id.* at 14-16. Defendants argue that the Anti-Kickback Statute allegations do not allege knowledge or willfulness, and lack details linking the kickbacks to claims for payment. *See id.* None of these arguments is availing.

First, the Anti-Kickback Statute allegations are more than mere, non-actionable regulatory violations. Payment claims that include items or services resulting from a violation of the Anti-Kickback Statute are false or fraudulent claims for purposes of the FCA. *See* 42 U.S.C. § 1320a-7b(g). Second, the Second Amended Complaint alleges that a unity of interest and ownership existed between Qualium and Amerimed, and Nader, Mostowfipour and other entities under their control. *See* SAC ¶ 25. The unity of interest and ownership, as shown by Nader and Mostowfipour's use and control of Qualium and Amreimed's assets for their personal use, meant that Defendants were each other's alter egos. *See id.* The Second Amended Complaint alleges that Defendants directed the kickback scheme; in light of Dresser's alter ego allegations, and Defendants' failure to challenge them, this sufficiently sets forth the role of each Defendant. *See id.* ¶ 76. Third, the Second Amended Complaint alleges that Defendants "knew they were submitting requests for payment . . . when they were not entitled to payment . . . . The Qualium Defendants knew that it was wrong to provide money to doctors to induce them to send referrals, including Medicare patients, to Bay Sleep Clinic's testing facilities." *Id.* ¶ 77. Fourth, the Second Amended Complaint alleges that Defendants paid Lewis and Arnstein for referring patients to Defendants' sleep clinics; provides examples of checks that Defendants gave to Lewis and Arnstein; and lists several patients that Lewis and Arnstein referred to Defendants for sleep tests, and the Medicare payments that Defendants received for performing tests on those patients. *See id.* ¶ 76.

### 4. Intentional, Palpable Lies

Defendants also argue that Dresser did not allege any intentional, palpable lies with

particularity or plausibility.  *See* Mot. at 16-19.  As to Dresser's claims, Defendants argue that the allegations that Defendants made false statements on their employees' DME dispenser license applications are insufficiently pled.  But the Second Amended Complaint alleges the details of the scheme: Nader signed DME dispenser license applications for employees and falsely stated that the employees had worked for one year as required by law, even though most of the employees had not.  *See* SAC ¶ 73.  *Ebeid* requires plaintiffs to allege "enough detail 'to give [Defendants] notice of the particular misconduct which is alleged to constitute the fraud charged so that [they] can defend against the charge and not just deny that [they have] done anything wrong." *Ebeid*, 616 F.3d at 999 (quoting *U.S. ex rel. Lee*, 245 F.3d at 1051-52).  Dresser's allegation provides notice of the alleged misconduct—making false statements on DME dispenser applications about whether employees had satisfied the one year work requirement—and thus satisfies this standard.

### 5.  Materiality

Defendants argue that Dresser did not allege materiality, because her claims are not pled with sufficient plausibility and particularity.  *See* Mot. at 19-22.  But Defendants challenge only Dresser's allegations regarding the claims the United States has intervened on; Defendants fail to make any arguments about the allegations regarding the Anti-Kickback Statute and DME dispensing claims Dresser is pursuing.  *See id.*  Because the United States' Amended Complaint is the operative complaint on the intervened claims, Defendants' arguments are moot.

### 6.  False Claims

Defendants argue that Dresser has not alleged false claims with plausibility and particularity because she has not provided enough indicia leading to a strong inference that Defendants actually submitted payment claims, and because Dresser states that she cannot identify all of Defendants' false claims for payment.  *See* Mot. at 22-23.  But Defendants seriously exaggerate the level of detail required by Rule 9(b).  *Ebeid* is clear that Rule 9(b) only requires Dresser to provide enough detail to give Defendants notice of the particular misconduct she alleges to constitute the fraud charged and does not require her to allege every single false claim.  *See Ebeid*, 616 F.3d at 999.  Dresser identified several claims arising out of the kickback scheme that Defendants were reimbursed for, and while use of representative examples is not required, it

1  is "one means of meeting the pleading obligation." *Id.* at 998-99; *see* SAC ¶ 76.

2         **7.  Statute of Limitations**

3         Defendants argue that the six-year statute of limitations applies to Dresser's claims.  *See*

4  Mot. at 23.  As with the United States' claims, dismissal on this basis at the Rule 12(b)(6) stage is

5  inappropriate.  *See supra* at 13.

6         **8.  Original Source**

7         Defendants argue that 31 U.S.C. § 3730(e)(4)(A), the public disclosure bar, blocks

8  Dresser's complaint, because she is not the original source of the information alleged in this case.

9  *See* Mot. at 23-25.  Defendants quote the statute at length, but they quote an outdated version of

10  the statute—Section 3730(e)(4)(A) was amended and substantially altered in 2010.  *See* P.L. 111-

11  148, Title X, Subtitle A, § 10104(j)(2), 124 Stat. 90.

12         The public disclosure bar currently provides that the court

13         shall dismiss an action or claim . . . if substantially the same allegations or
       transactions as alleged in the action or claim were publicly disclosed—

14

15         (i) in a Federal criminal, civil, or administrative hearing in which the Government
       or its agent is a party;

16         (ii) in a congressional, Government2 Accountability Office, or other Federal report,
       hearing, audit, or investigation; or

17

18         (iii) from the news media,

19         unless the action is brought by the Attorney General or the person bringing the
       action is an original source of the information.

20  31 U.S.C. § 3730(e)(4)(A).  Before reaching the issue of whether Dresser is an original source, the

21  court must first determine whether Dresser's allegations were publicly disclosed in one of the

22  statutorily enumerated sources.  Defendants argue that the allegations were publicly disclosed

23  because Dresser relies on publicly available Medicare Provider Utilization and Payment Data to

24  allege claims on the government fisc.  *See* Mot. at 24.  Defendants also argue that Dresser's

25  kickback allegations were publicly disclosed in a federal investigation because Exhibit 5 to the

26  United States' Amended Complaint lists all the false claims that the government has identified to

27  date.  *See* Reply at 9.  Both arguments are unsuccessful.

28         First, the Medicare Provider Utilization and Payment data lists only payments made by

United States District Court
Northern District of California

Medicare; it does not list the claims Defendants submitted or the factual statements Defendants made in support of those claims, and thus does not identify the fraudulent scheme pled in Dresser's allegations.  *See Medicare Provider Utilization and Payment Data: Physician and Other Supplier*, CMS.gov, https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/Medicare-Provider-Charge-Data/Physician-and-Other-Supplier.html.  Second, Dresser pled the kickback allegations in her initial Complaint, before the United States investigated; they were not publicly disclosed prior to Dresser's Complaint.  *See* Compl. ¶¶ 16-18, ECF 1.

## IV.    ORDER

Defendants' motion against the United States is GRANTED IN PART and DENIED IN PART, with leave to amend as to the United States' implied false certification claim.  Defendants' motion against Dresser is DENIED, but leave to amend is granted if she wishes to pursue a claim based on implied false certification.  Any amended complaint shall be filed by August 8, 2016.

**IT IS SO ORDERED.**

Dated: July 18, 2016

_____
BETH LABSON FREEMAN
United States District Judge